BILLIE R. WOOTTON, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wootton v. Commissioner
Docket Nos. 2122-79; 16407-79; 1066-80.
United States Tax Court
T.C. Memo 1980-391; 1980 Tax Ct. Memo LEXIS 201; 40 T.C.M. (CCH) 1254; T.C.M. (RIA) 80391; September 16, 1980, Filed *201 Held, petitioner's employment on a construction project was indefinite, rather than temporary, and accordingly deductions under section 162(a)(2) for away from home traveling expenses are denied. Billie R. Wootton, pro se. Paul G. Topolka, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent has determined deficiencies in petitioner's Federal income tax as follows: Docket No.
Year
Deficiency
2122-79
1976
$1,050.00
16407-79
1977
3,291.67
1066-80
1978
2,324.51
Due to concessions the issue for decision in these consolidated cases [1] is whether petitioner was "away from home" within *202 the meaning of section 162(a)(2). [2]
FINDINGS OF FACT Petitioner was a resident of Leland, North Carolina when he filed his petitions herein. Petitioner's 1976, 1977 and 1978 Federal income tax returns were filed with the Internal Revenue Service Center, Memphis, Tennessee. [3]
Petitioner is a pipefitter by trade. Since December 21, 1967 petitioner has been a member of Local 329 of the Pipefitters Union, which local is located in Wilmington, North Carolina. Local 329 is the source of petitioner's work. Prior to and during the years in issue petitioner was a resident of Leland, North Carolina. Petitioner owned a home there in which his family resided. In the course of his trade *203 petitioner is frequently required to travel to somewhat distant construction projects. At the time of the trial of this case (February 25, 1980), the last time that petitioner was able to obtain employment near his residence was the period from June 1973 until February or March of 1974. Petitioner then worked for a period in Florence, South Carolina, which is about 80 miles from Leland, North Carolina. Petitioner also worked in Tuscaloosa, Alabama for a short period during 1974. From November 1974 to February 1975 petitioner was employed in Richmond, Virginia by the Natkin Company. Petitioner then worked for Phillip-Morris in Richmond from February 1975 until May 1975. During these periods petitioner tried to obtain employment nearer his residence by contacting Local 329 in Wilmington. However, the construction industry was not doing well at that time in North Carolina and no such jobs were available. On May 31, 1975 petitioner began work for Stone and Webster Engineering Corporation (Stone and Webster). Stone and Webster was the general contractor for Virginia Electric and Power Company (Vepco) engaged in the contruction of a nuclear power plant located in Louisa County, *204 Virginia.Construction on the nuclear power plant had commenced in late 1971 or early 1972. Petitioner obtained this employment with Stone and Webster through Local 602 of his union, located in Washington, D.C. Petitioner used a "travel card" issued by Local 329's business manager to obtain employment through Local 602. Petitioner did not have a contract with Stone and Webster, nor did Stone and Webster represent to petitioner the possible duration of his employment. The length of petitioner's employment depended upon petitioner's ability, work record and relationship with other workers. Petitioner was paid on an hourly basis. Petitioner was employed by Stone and Webster on the Louisa project until August 30, 1979, when petitioner's employment was terminated due to absenteeism (caused by the death of petitioner's mother). Petitioner was terminated from work on March 15, 1976 due to illness. Petitioner was rehired on April 6, 1976. Other than the period during which petitioner was ill, petitioner was continuously employed by Stone and Webster from May 31, 1975 until August 30, 1979. The construction for which petitioner was employed was being done in two units and petitioner *205 was able to be transferred between units because of his good work record. During his employment with Stone and Webster petitioner shared an apartment with three other workers. Petitioner's weekly share of the apartment's expenses was $20.Petitioner drove to Leland from the project (a distance of approximately 324 miles) every weekend that he was not working. On his Federal income tax returns for 1976, 1977, and 1978 petitioner deducted the amounts of $3,766, $4,454 and $3,783 as traveling expenses. In three statutory notices of deficiency [4] respondent disallowed these deductions in full. OPINION Petitioner contends that his employment during 1976 through 1978 was temporary and thus he is entitled to deduct his traveling expenses due to such employment. Respondent, on the other hand, maintains that petitioner's employment was indefinite during the years in issue and thus no deductions for traveling expenses are allowable. Section 162(a)(2) allows as a deduction all traveling expenses paid or incurred during the taxable *206 year while away from home in the pursuit of a trade or business. Three conditions must be met to satisfy section 162(a)(2): (1) the expense must be a reasonable and necessary traveling expense; (2) the expense must be incurred while away from home, and (3) the expense must be incurred in the pursuit of business. . "Home" as used in section 162(a)(2) is the taxpayer's "tax home," which is the location of the taxpayer's principal place of employment. , on appeal (4th Cir. August 15, 1979). However, when the principal place of business is merely temporary, as opposed to indefinite, a taxpayer may be entitled to deduct his traveling expenses incurred at that place (provided the statute's other requirements are met), , revg. , affd. per curiam ; . "Temporary" employment is the type of employment in which termination within a short period could *207 be foreseen. . Whether employment is temporary or indefinite is a question of fact. ; . Petitioner was initially employed on May 31, 1975 as a pipefitter on the construction of the nuclear power plant. This construction had commenced some 3-1/2 years prior to petitioner's employment thereon. Petitioner was given no indication how long his employment would be; petitioner had no written contract with his employer. Petitioner obtained the work through his union as a "traveler." [5] Except for a 3-week period in March and April of 1976 when petitioner was ill, petitioner continuously worked at the power plant until August 1979, when petitioner's employment was terminated due to absenteeism. Petitioner stated that employment on this construction project depended largely upon an employee's talent, work record and his ability to get along with his fellow employees. *208 Petitioner's main argument as to the temporary nature of his employment is that it would have been unreasonable to have required petitioner to move from Leland, North Carolina (where petitioner had always resided) to a location near the power plant. While such a move may have seemed unreasonable to petitioner, that is not the test of whether his expenses are deductible. If a taxpayer's employment is temporary, it is not reasonable to expect him to move his residence, not the converse. The deduction allowed by section 162(a)(2) thus mitigates a taxpayer's duplicate living expenses caused by the temporary employment. . On the other hand, when the employment is indefinite, maintenance of a residence distant from such employment is a matter of the taxpayer's personal choice and his traveling expenses are nondeductible. . Petitioner has not provided any evidence why his employment at the power plant was temporary during 1976, 1977 and 1978, other than a general assertion that the vast majority of construction jobs are temporary. Petitioner had continuously been employed *209 by Stone and Webster for 7 months before 1976, the first year in issue. Furthermore despite petitioner's 3-week illness during 1976 petitioner was immediately re-employed [6] by Stone and Webster. Petitioner's illness is not the type of foreseeable occurrence which would cause his initial employment to be termed temporary. The fact that petitioner had no assurance of how long his employment would last is not determinative of whether it was temporary or indefinite. . Petitioner relies on several cases in support of his claimed deduction. ; ; , revd. sub nom. , cert. denied sub nom. ; *210 . We find each of these cases to be distinguishable. In Frederick, the taxpayer was a carpenter employed in May 1970 to work on an anti-ballistic missile project in North Dakota. The actual construction of the project depended largely upon the progress of the Strategic Arms Limitations Talks and there were constant rumors of a shutdown. Because of the harsh winter weather, work was seasonal and over 80 percent of the project's carpenters were laid off the first winter of petitioner's employment. [7] The Eighth Circuit agreed with the District Court that based on those facts the taxpayer's 3-year employment was temporary. Petitioner has focused only on the length of employment in Frederick and not "the taxpayer's prospects for continued employment." Frederick v. United States, 602 F.2d at 295. In , the petitioner was a welder who resided in North Carolina and obtained *211 a construction job in Maryland in September 1973. The petitioner's work status of "traveler" made him subject to lay offs when work became slack, which it was in 1974, the year in issue. Petitioner was laid off in October 1974. In holding that the petitioner's employment was temporary, we looked at the tenuous nature of his employment and the general nature of the construction project. Petitioner herein has not shown us the likelihood of his being laid off for reasons other than illness, absenteeism, inability to work properly or to get along with others. In , we held employment from June 21, 1971 until October 24, 1974 to be temporary based largely upon the petitioner's ties to his community.Our holding was reversed by the Fourth Circuit, to which the instant case is appealable, in , cert. denied sub nom. based on that court's holding in We thus do not find Patrick to be of aid to the petitioner. Lastly, petitioner points to , *212 in which we allowed a crane operator on the same power plant construction project where petitioner was employed to deduct his traveling expenses. It was understood that Barkley's job would not last until the completion of the project. Additionally, Barkley was assigned to one particular crane and when that crane was no longer needed he would be laid off. Despite having four or five cranes of his shut down, Barkley managed to be reassigned to a new crane each time and remained employed for 16 months. It is readily apparent that the taxpayer's prospects of continued employment as a crane operator in Barkley were much thinner than what petitioner has shown his prospects of continued employment as a pipefitter to have been. [8]
While we are sympathetic to the plight of those like petitioner, who are forced by economic exigencies to seek employment far from their established residences, we cannot afford relief by way of an income tax deduction unless the express provisions of the statute have been met, *213 which petitioner has not done. Decisions will be entered for the respondent. Footnotes
1. These cases have been consolidated for purposes of trial, briefing, and opinion. ↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. Petitioner's 1976 return was filed jointly with his former spouse. Respondent accordingly issued a joint notice of deficiency for 1976. Petitioner's former spouse has not filed a petition with this Court and is thus not a party to this proceeding.↩
4. The notices of deficiency were dated November 30, 1978, September 5, 1979, and December 10, 1979 for the years 1976, 1977 and 1978, respectively.↩
5. Petitioner did not present any evidence as to any possible effects that his "traveler" status may have had upon his job security at the power plant.↩
6. While respondent states that petitioner's employment was for a 4-year and 3-month period, it is apparent from the record that petitioner's employment was actually terminated on March 15, 1976 until April 6, 1976 when petitioner was rehired by Stone and Webster.↩
7. Over 50 percent of the carpenters were laid off during each of the next two winters.Retention over one winter did not assure a worker's employment during the next two winters.↩
8. See also in which the petitioner, also a pipefitter on the same power plant project, relied upon Barkley↩.